Hillsborough,
June 29, 1907.

## Lord, *Adm'r*, *v*. Manchester Street Railway.

In an action against a street railway company to recover for injuries occasioned by the burning out of a fuse on an old car, a statement of counsel to the effect that the defendants knew that the electrical equipment would deteriorate with age is a conclusion fairly inferable from the evidence as to the age of the car, and not exceptionable.

It is within the limits of legitimate advocacy for counsel to positively state as a matter of fact an inference which may properly be drawn from the evidence.

Where the evidence in an action for negligently causing death discloses that the decedent had cared for her household and taken boarders, testimony as to the number and ages of her children is competent as tending to show her capacity to earn money.

A party who neglects to ask for instructions limiting the application of evidence cannot afterward take advantage of the court's failure to give such instructions, by an exception to the charge.

Evidence as to the customary speed of electric cars at a given point is competent to show the speed of a particular car at the same place upon a subsequent occasion.

Certain evidence deemed sufficient to warrant a finding that a street railway company was guilty of negligence in failing to provide a safe car, and that a passenger injured thereby was without fault.

Case, for negligently causing the death of Matilda Ouillette, the plaintiff's intestate. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1907, of the superior court by *Pike*, J.

The plaintiff's evidence tended to prove the following facts: On September 28, 1905, Mrs. Ouillette was a passenger on one of the defendants' open cars, and was seated nearly over and a few feet from the fuse-box. During her journey the fuse burned out with a loud report, and a sheet of flame, which streamed several feet above the floor of the car, seemed about to envelop her. All the passengers were frightened. Mrs. Ouillette jumped to the opposite side of the car to avoid the flame, and either stepped or fell from the car to the paved street, and was killed. The car was an old one and was running at a speed of about fifteen miles an hour. Mrs. Ouillette had kept house for her husband and taken boarders. She left no estate.

It appeared that fuse-boxes are attached to the outside sills of such of the defendants' cars as are equipped with the appliance,

and that passengers are often badly frightened when a fuse so located burns out. The fuse-box can as well be placed under the vestibule, and in that event a burning fuse is not likely to frighten passengers. The defendants knew that a fuse might burn out at any time, and that when such a thing occurred there would be a sharp report, varying according to the strength of the electric current from that made by a common firecracker to that made by a cannon cracker, and that the noise would be accompanied by a flame rising from a few inches to several feet above the floor of the car.

The defendants moved for a nonsuit and for the direction of a verdict in their favor, on the grounds that the evidence did not disclose negligence on their part contributing to cause the injury complained of, and that Mrs. Ouillette's act in stepping from the car was not reasonably to be anticipated and constituted contributory negligence. The motions were denied, and the defendants excepted.

A witness called by the plaintiff, being asked what she and another female passenger did at the time of the accident, replied that they arose to jump from the car, and that the conductor " stopped us—kind of changed our senses." To this evidence the defendants excepted.

A witness called by the plaintiff was asked what the custom of motormen was as to running cars at the place of the accident, and replied that when a car was waiting it was their practice to put on full power. The defendants excepted to this evidence, and also to testimony that Mrs. Ouillette was survived by four small children.

Several witnesses who had been employed by the defendants testified that passengers were frequently frightened by the burning out of a fuse; but no witnesses were produced who had been so frightened, except those who were upon the car with Mrs. Ouillette. In closing argument, the defendants' counsel said that if it were true that passengers were frequently frightened in that way, the jury would not have to rely on the testimony of discharged servants. " You could go out and find plenty of people who had either been frightened themselves, or had seen other people frightened." In answer to this, the plaintiff's counsel said: " Use your good judgment again, good common-sense. If we had the resources of the Manchester Street Railway, we would make the effort." To this the defendants excepted. In discussing the question of the defendants' fault, the plaintiff's counsel said that they knew, among other things, that " it was an old car," and were aware that electrical equipment " deteriorates with age." To this statement the defendants excepted.

*Taggart, Dickinson, Wyman & Starr* and *Tuttle & Burroughs,* for the plaintiff.

*Burnham, Brown, Jones & Warren,* for the defendants.

YOUNG, J.    1. As it is common knowledge that all mechanical devices wear out, it cannot be said as matter of law that a fuse is not more likely to burn out in an old electrical appliance than in a new one.    Hence there is no presumption that the defendants were prejudiced by the statement of the plaintiff's counsel, to the effect that they were in fault for using an old car, knowing that its electrical equipment would deteriorate with age.    In the absence of evidence that electrical equipment is excepted from the general rule as to the effect of long continued use upon mechanical appliances, the statement of counsel was merely the conclusion fairly inferable from the evidence as to the age of the car.

2. The plaintiff produced no witnesses who had been frightened by the burning out of a fuse prior to the accident; and from that fact the defendants' counsel argued that the testimony that passengers were frequently frightened in that way was false.    In other words, the jury were asked to infer, from the plaintiff's failure to adduce such proof, that nobody had ever been frightened in that way before the accident in question, and that the defendants were not chargeable with negligence because they did not anticipate the fright of the plaintiff's intestate.

Since it is common knowledge that a party litigant usually produces all available evidence in support of his contentions, the plaintiff's failure to explain why he did not call some of the persons who, according to his evidence, had been so frightened and could have been summoned to testify, might induce the jury to find that no such persons existed.    It was therefore proper for counsel to explain the omission, in so far as he might do so by a reference to the facts in evidence.    *Hersey* v. *Hutchins,* 70 N. H. 130.    In explanation, the plaintiff's counsel said he would have produced the witnesses if his client had possessed sufficient means. That is the substance of his statement that he would have made the effort if he had the resources of the defendant corporation. If the jury could properly find that the witnesses were not produced because the decedent left no estate, the statement of counsel is not objectionable.    As the plaintiff would naturally have produced available witnesses if he had had the means, and as it appeared that the decedent left no estate, it is clear that the plaintiff's failure to adduce the proof in question might reasonably be found to result from a lack of funds.

The defendants cannot complain because counsel asserted that he would have made an effort to produce available witnesses if he had had sufficient means, instead of requesting the jury to find that fact from the evidence. When in the course of argument counsel has occasion to direct the attention of the jury to an inference which may properly be drawn from the evidence, the conclusion may be positively stated as a matter of fact, or the evidence bearing thereon may be marshalled and the jury be requested to draw the desired inference therefrom. If the former course be pursued, the verdict cannot be set aside on the ground that it was induced by unsworn testimony. *Story* v. *Railroad*, 70 N. H. 364, 387. In such case, the question whether counsel has exceeded the limits of legitimate advocacy is not to be determined by the form of his statement. The test is whether the inference which counsel asserts as a fact, or asks the jury to find, may properly be drawn from the evidence.

3. The question asked the witness as to the reason why she and another female passenger did not jump from the car was in strict compliance with the rule, and the same is true of the answer so far as it concerned the action of the witness. So far as the answer related to the other passenger, it amounted to no more than a statement that she appeared frightened and about to jump, but was prevented by the conductor. This was merely a description of what the witness saw and heard.

4. It was incumbent upon the plaintiff to show Mrs. Ouillette's capacity to earn money. One method of proof was to show what work she habitually did. It was therefore competent to show the number and ages of her children, since it appeared that she had cared for them besides doing other work. If the defendants were of opinion that the jury should be instructed as to the bearing of the evidence, they should have requested the court to limit it to the issue of damages. In the absence of such a request, they cannot now be heard to assert that the jury may have made an improper use of the evidence. It is the policy of the law to end litigation. If a party neglects to ask for instructions limiting the application of evidence, he cannot afterward take advantage of the court's failure to give such instructions by an exception to the charge, even if it would have been error to refuse to limit the evidence in response to a request to do so.

5. Evidence as to the customary speed of the defendants' cars at the place of the accident was competent as tending to show the speed of the car upon which the plaintiff's intestate was riding at the time of her injury. If the exception to the evidence was intended to be taken to the answer of the witness, it must be overruled. If the defendants deemed the answer prejudicial in so far

as it was inapplicable to any facts in evidence, they should have requested the court to instruct the jury not to consider it. Having omitted to take this step, they cannot now insist that the court's failure to exclude the objectionable matter constitutes reversible error. *Meloon* v. *Read*, 73 N. H. 153.

6. If the decedent was frightened by the noise and electrical display which accompanied the burning out of the fuse, it cannot be held that her negligence contributed to cause her death if a person of average prudence, frightened as she was, would, or might, have pursued the same course to avoid impending danger. Upon all the evidence, it cannot be said as a matter of law that the electrical display was so slight that a person of average prudence frightened thereby would not have tried to remove himself as far as possible from the fuse-box, and that in such an attempt he might not have been thrown from a car running at a speed of fifteen miles an hour.

The defendants knew the location of the fuse-box. They were aware that the fuse was designed to burn out whenever the wires were overloaded, that no one could foresee such a happening or predict the violence of the explosion and the extent of the electrical display accompanying it, and that passengers were sometimes so frightened by the noise and flames that those in charge of the cars had difficulty in averting accidents. It was incumbent upon the defendants to so equip and operate their cars as to render it improbable that passengers who were themselves in the exercise of care would suffer injury; and this obligation was imposed for the benefit of those whom the defendants either knew, or ought to have known, were liable to be injured by a non-performance of the duty. It is clear that it might reasonably be found from the evidence that a man of ordinary prudence, possessed of the defendants' knowledge of the situation and its dangers, would not use for the conveyance of women and children a car with its fuse-box attached to the sill,—in other words, that the defendants negligently failed to provide a safe car. It can also be found that their fault in this respect was the legal cause of the injury for which the plaintiff seeks to recover, if there is evidence tending to prove that they ought reasonably to have anticipated such an accident as the natural and probable result of the continued use of the defective car; and it is obvious that there was such evidence, unless it is to be held as a matter of law that street railway proprietors who equip their cars with an appliance which they know may explode at any moment, producing at the same time a loud detonation and sheets of flame, are not bound to anticipate that a female passenger seated in close proximity to the

device may be so startled by such an explosion as to jump from the car because of fright.

*Exceptions overruled.*

All concurred.